GEORGE D. MAYO MACH. CO. v. HEMPHILL MFG. CO.

(District Court, D. Rhode Island.    December 29, 1917.)

No. 2756.

PATENTS ⬤⇒328—VALIDITY AND INFRINGEMENT—KNITTING MACHINE.

The Mayo patent, No. 726,178, for improvements in knitting machines, claims 23, 24, 38, 41, 43, 48, 49, and 130, are of doubtful validity in point of invention and novelty, but in any event must be limited to the precise construction shown; as so limited, *held* not infringed.

In Equity.    Suit by the George D. Mayo Machine Company against the Hemphill Manufacturing Company.    On final hearing.    Decree for defendant.

Howson & Howson, of New York City, for plaintiff.
Wilmarth H. Thurston, of Providence, R. I., for defendant.

BROWN, District Judge.    Infringement is charged of letters patent 726,178, April 21, 1903, to George D. Mayo, for improvements in knitting machines.    Claims 23 and 24, which relate to "sinkers and their guides," and claims 38, 41, 43, 48, 49, and 130, which relate to the distinct subject-matter called "the transfer means" are in suit:

23. In a knitting machine, a sinker cylinder having radially arranged sinker guideways and a hold-down portion above the same combined with sinkers arranged in said guideways and having portions overlying said hold-down portion.

24. In a knitting machine the combination with sinkers each having a plurality of arms, of a sinker cylinder therefor provided with guideways open at both ends for both the arms of said sinkers.

It is evident from the chart of defendant (Record, page 187) that the prior art leaves but a slight range for variation in structure in respect to the subject-matter of claims 23 and 24.

The relation of plaintiff's and defendant's combinations to the prior art may best be understood by reference to the drawings on the comparative chart. It is difficult to understand from reading the specification just what improvement the patentee thought that he had made. Mr. Livermore, defendant's expert, says:

"The sinkers and their supports shown and described in the Mayo patent are characterized or distinguished from the prior constructions, if at all, solely by certain mechanical details involving a certain procedure in the matter of manufacture," etc.

The specification describes the procedure in making the sinker cylinder of the patent in suit, and characterizes it as "extremely simple in construction." The defendant has pointed out that in this respect it has no advantages, but is less desirable than the structures of the prior art, since it requires three machine operations, whereas prior art constructions required but one machine operation in forming the same.

The plaintiff insists that the manner of forming the Mayo sinker ring cannot be read into claims 23 and 24, and that the manner of forming this ring is the subject of other claims which are not in suit. Any advantages in simplicity or economy of manufacture, therefore, may be disregarded.

In Mayo Knitting Machine & Needle Co. v. Jenckes Mfg. Co. (C. C.) 121 Fed. 110, 121, 122, the subject-matter of sinkers and holding devices was considered, and claim 11 of the Mayo patent of 1891, No. 461,357, was held void for lack of novelty. Upon appeal (133 Fed. 527, 535, 536, 66 C. C. A. 503), in an opinion by Judge Colt, it was said:

"The problem is here simply to hold down the sinkers, and the essence of the Mayo improvement lies in the location of the second ring to hold down their inner ends.

"It is not every minor change or improvement in construction in a machine composed of many different parts, like a circular knitting machine, that rises to the dignity of invention. The work of holding down the sinkers had been previously done by two rings, both located on the outer side of the hooks of the sinkers. In view of what already existed in the art, and the nature and character of this improvement, there was no invention or patentable novelty in simply changing the location of one of the rings to the other side of the hooks, or to the extreme inner ends of the sinkers."

The present question of invention in the combination of claims 23 and 24 seems of a like character, though there is a difference in the precise questions involved. The prior Randall patent, No. 542,311, is distinguished only because it—

"fails to disclose the positively held down-hold of the Mayo patent in suit and of the defendant's machine."

Defendant's counsel contends that it would not constitute a patentable invention to omit Randall's springs and make a positive connection; and this seems a reasonable contention.

The defendant, like Randall, uses a separate hold-down ring—a flat, thin annulus of sheet metal, which bears upon the inner ends of the sinkers. A hold-down ring of this old type requires the use of means to secure it against upward movement. Randall shows the use of springs for this purpose; the defendant, instead of springs, employs an inwardly projecting flange on the sinker cylinder. As defendant's

hold-down ring is located at the inner side of the sinker ring and projects inward from the inner cylindrical surface thereof, this requires a modification of the shape of the sinker, and that its lower leg should be extended inwardly so as to underlie the inwardly extending hold-down ring.

Defendant's Hemphill patent, No. 1,048,965, shows this construction. It cannot be said that the defendant has copied the plaintiff's construction merely because he has provided a positive as distinguished from a spring connection to prevent upward movement of the old hold-down ring. If the plaintiff has dispensed with the separate hold-down ring by transferring its function to an integral part of the sinker cylinder, he cannot, for that reason alone, reasonably claim to prevent the employment of positive means for holding in place a ring of the old type, or prevent further improvement in the form of the old ring and in its connections.

I am of the opinion that the record fails to show any substantial novelty which makes the combinations of 23 and 24 patentable over the prior art, and that in any event a construction cannot be given to these claims broad enough to cover the defendant's device without being anticipated by the prior art.

The second branch of the case relates to what is termed the "transfer means," but which might more properly be called "means for preparing for transfer." This is used only in connection with the knitting of men's stockings, or half hose, which are provided with ribbed tops, which tops are ordinarily knit on a separate machine, and then transferred to the needles of a stocking machine by which the rest of the stocking is knit.

In making this transfer it is desirable first to bring all the needles, some of which, when the machine is at rest, are at a lower level than others, to a common level.

The plaintiff says that claim 38 may be taken as typical of all claims in suit relating to this topic:

38. A knitting machine provided with a double-acting stitch-forming cam and means to withdraw it bodily from operative engagement with the needles.

The plaintiff contends that:

"There is no disclosure in the prior art of a rotary knitting machine having a double acting stitch cam which as a unit can be withdrawn laterally from operative engagement with the needles to permit leveling of the needles to receive the transfer of the ribbed top of the stocking."

The stitch cam is required to be withdrawn radially out of operative relation to the needle butts, in order that the depressed needles may be raised to the level of the other needles.

The defendant shows that the withdrawal of an obstructing cam or cams for the purpose of enabling the needles to be brought to a general level was old and well known in the art, and contends that there was no inventive thought in withdrawing a single, double-acting stitch cam in order to get it out of the way which was not involved in the withdrawal of any obstructing cam. The defendant relies especially upon

the prior patent to Hemphill, No. 629,503, of 1899. This shows two separate single-acting stitch cams, each of which is separately mounted so as to be radially movable, in order to permit leveling of the needles. There is evidence that Mayo carefully examined this machine and made sketches and notes before devising the invention of the patent in suit. In view of this the limitation of plaintiff's claims (except 48), by the term "double-acting stitch-forming cam," is significant. Using a single cam of this description, he needed but a single mounting for the purpose of a radial withdrawal movement.

Whether there was patentable novelty in doing for a single double-acting stitch-forming cam what had been done by Hemphill for each of two single-acting stitch cams, is doubtful; especially in view of the defendant's statement that in the Hemphill 1899 machine only one of the two radially movable cam blocks is radially withdrawn for the purpose of an operation of leveling the needles for transferring, and that this cam block carries the only obstructing cam; i. e., one of the single-acting stitch cams.

In the defendant's machine two single-acting stitch cams are both mounted on one cam block, and both are withdrawn at once.

The plaintiff contends that it makes no difference how many stitch cam surfaces may be used, provided they are fixedly mounted in one block so as to be withdrawable bodily, or as a unit.

To this the defendant further replies that two separate, single-acting stitch cams mounted on the same cam block are not the same thing as a single double-acting cam having two cam surfaces which merge at a common apex; for with the former the results and advantages obtainable with the latter, including absolute uniformity of stitch, cannot be obtained.

This is a matter specially referred to in the specification of plaintiff's patent, page 3, lines 58–69.

Omitting this feature would seem to reduce the plaintiff to claims for such advantages as might result from using one cam block, instead of two, as in the former Hemphill patent of 1899. But this disregards, also, both the specific limitation in the claims to a "double-acting stitch-forming cam" and the form thereof as illustrated in the drawings.

In view of the prior art, as illustrated in Hemphill, 629,503, of 1899; O'Neil, 387,251; Gordon, 438,686; Hemphill, 516,722—I am of the opinion that the claims in suit are of doubtful validity in point of invention, but that in any event they must be limited to the precise construction shown, and that, so limited, they are not infringed.

It may be said as to both subject-matters of the present case that there is a failure to show any novel conception, or anything more than changes of details of construction. The claims in suit are distinguished from the prior art only by what may be termed mechanical peculiarities, and the record, which is quite extended, is devoted principally to pointing out differences in structural detail rather than novel conceptions.

I am unable to say that in either case there was a novel conception which originated with plaintiff's patentee, and which defendant has

borrowed from the plaintiff's device, rather than from the prior art, or from ordinary principles of mechanical construction.

The bill will be dismissed.