### CONSOLIDATED ELECTRIC MANUF'G CO. et al. v. HOLTZER.

(Circuit Court of Appeals, First Circuit. April 16, 1895.)

#### No. 123.

1. PATENTS—WHAT CONSTITUTES PATENTABLE INVENTION.
   The right to improve on prior devices by making solid castings in lieu of constructions of attached parts is so common and universal in the arts that the burden rests upon any one claiming patentability for such an improvement to show especial reasons in support of his claim.

2. SAME—COMMERCIAL SUCCESS.
   That the patented article is a commercial success, and rapidly supersedes others of its general type, are considerations which are to be applied with caution, and only in doubtful cases, turning on questions of utility or invention. Olin v. Timken, 15 Sup. Ct. 49, 155 U. S. 141, and De Loriea v. Whitney, 11 C. C. A. 355, 63 Fed. 611, followed, and Watson v. Stevens, 2 C. C. A. 500, 51 Fed. 757, distinguished.

3. SAME—"NEW RESULTS."
   On the question of the patentability of an improvement in galvanic batteries, consisting in casting the cover, cup, and lip in one solid piece, instead of using several pieces secured together, no weight is to be attached to the alleged achievement of new results, consisting in the avoidance of the resistance encountered by electricity in passing joints, and in preventing the weakening effect of the corrosive liquid upon the joints themselves, for these results are the same that are achieved in all the arts using corrosive liquids when metallic and other joints are dispensed with.

4. SAME—GALVANIC BATTERIES.
   The Holtzer patent (No. 327,878) for an improvement in galvanic batteries *held* void for want of invention. 60 Fed. 748, reversed.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

This was a bill by Charles W. Holtzer against the Consolidated Electric Manufacturing Company and William Rotch and Charles G. Winter, its president and treasurer, respectively, for alleged infringement of letters patent No. 327,878, issued October 6, 1885, to Charles W. Holtzer, for an improvement in galvanic batteries.

The circuit court rendered a decree for complainant. 60 Fed. 748. Defendants appeal.

Anthony Pollok and Philip Mauro, for appellants.

Frederick P. Fish and W. K. Richardson, for appellee.

Before PUTNAM, Circuit Judge, and NELSON and WEBB, District Judges.

PUTNAM, Circuit Judge. The first claim covers, in an electric battery, a negative electrode, including cup, cover, and lip, cast solid, with an opening in the cover for the positive electrode. The phraseology of this claim is too clear to be limited to any special material as the constituent element of the negative electrode, so that the device of the appellant (defendant below) infringes, notwithstanding its cup is formed of a simple carbon, and not of agglomerate material. The second claim is like the first, except that it limits the inclosure of the battery to a glass jar, and adds the elements of an insulating bushing surrounding the opening in the cover. The only advance alleged to be covered by either claim is in the fact that the cover, cup, and lip are cast solid, instead of being made of several parts soldered together, or otherwise secured to each other. There is no question on the score of utility, and a cup cast solid with a cover and lip was novel in connection with an electric battery. Therefore, the only issue is whether the device in suit contains invention, within the meaning of the statutes touching patents for mechanical devices.

The right to improve on prior devices by making solid castings in lieu of constructions of attached parts is so universal in the arts as to have become a common one, so that the burden rests on any one who sets up this improvement, in any particular instance, as patentable, to show especial reasons to support his claim. Livermore, the complainant's expert, states that he does not know that any one of the features of complainant's device was of "substantial novelty," but that, so far as he knew, a battery containing all these features was new. This covers only the matter of mere novelty; and so much as this may be said of any combination in any of the arts in which, for the first time, two or more parts are cast as one. The complainant relies on the rule applied by this court in Watson v. Stevens, 2 C. C. A. 500, 51 Fed. 757, 760, 761, and claims that prior workers in this art had sought to devise means for avoiding the necessity of joints between the negative electrode and the cover or lip; but had never succeeded. We fail to find any evidence of this in the record. He also claims that the Holtzer battery speedily superseded all others of its general type, which claim is sustained by the proofs. But all such considerations are applied with caution to a very limited class of cases, otherwise doubtful, as is made clear in Watson v. Stevens, and in the opinions of the supreme court therein cited, and in cases decided by that court since Watson v. Stevens, of which the latest is Olin v. Timken, 155 U. S. 141, 155, 15 Sup. Ct. 49. We also, in De Loriea v. Whitney, 11

C. C. A. 355, 63 Fed. 611, 621, referred to the rule in the following words:

"The appellants rely on the fact that the patented machine was the first successful one, and on the fact that it had great commercial success. The decisions touching the effect of these propositions are so numerous and modern that they need not be referred to specifically; but they limit the application of them to doubtful cases, turning on questions of utility or patentable invention."

In the suit at bar there are not facts enough, of the character applied in these cases, to justify this court in giving complainant a monopoly in this particular art of the privilege of replacing jointed parts by solid castings,—a privilege so common and so constantly exercised in all other arts. But it is said a new result has been accomplished. This is a proposition which sometimes throws light on questions of this character, sometimes does not, and occasionally so appeals to the imagination as to be misleading. Every novelty, in some sense, brings a new result; but whether the new result is such, within the meaning of the decisions, is a very different question. These words are very far from furnishing a universal solvent. Sometimes the character of the new result is such as appeals directly to the trained mind, as well as to the ordinary one. But usually the novelty of the result is only one fact to be weighed in the mass with others. In the case at bar it is of an unimportant character, in one aspect urged by the complainant, and, in the other aspect urged by him, is so common and universal as not to be of any weight. The patent, in its specifications, looks only to the results of "fewer parts, and more simple construction," and of producing an electrode "very strong and durable," which may be "handled without fear of separation." These are not new results, but are the ordinary consequences of dispensing with joints by casting solid, well known in all the arts.

The counsel and the expert suggest alleged new results, not spoken of in the specifications, namely, those arising from the fact that every joint in a structure through which electricity is to pass causes a certain amount of resistance, and also from the fact that the corrosive liquid in the battery attacks the joints, and thus increases the resistance, besides weakening the structure.

As to the first, there is no evidence in the record, except the general statement of complainant's expert that the absence of joints secures "greater electrical efficiency and durability." There are no facts given by which the court can determine whether this word "greater" is used in a minimized, comparative sense, or broadly. There is nothing to show that there was in the prior batteries any loss of efficiency on this score which was taken as of any account, or regarded as a mischief to be overcome.

As to the second proposition, the complainant put in no proof, and apparently looked upon it as so incidental that he was content to rest it on two or three questions put to one of appellant's witnesses at the close of his cross-examination. He refers us to no other proof on this topic. This evidence was as follows:

"Q. What is the advantage of the form of battery shown in exhibit defendants' battery over the Burns form, after the batteries have gone into use? Ans. The principal advantage that my experience has discovered consists in the fact that, the connections to the electrode being brought up further from the solution, there is less liability of the connecting wire becoming corroded off. Q. You mean that capillary attraction tends to draw up the liquid in the battery between the carbon and the metallic ring in the Burns form, and so produces corrosion. Is that correct? Ans. No; that is not what I intended. In handling batteries, it is an easy matter to allow a little of the solution to remain on the tops of the batteries, and, if the connection was made even with the surface of the cover, it would tend to corrode the connection; but in this exhibit this could not occur, as the metal connections are all above the surface. Q. Do you know whether or not, when the batteries of this type had gone into use, they tended to become corroded between the metal ring and the carbon? Ans. In my last answer I think I stated that if the metal connection was even with, or below, the top of the battery, there would be such liability."

This proposition is thus left with the same indefiniteness as the other. But, beyond this, the whole topic is disposed of by the fact that these alleged new results are the same as those from time immemorial common to all the arts using corrosive liquids, whenever metallic and other joints have been dispensed with, whether in buckets for transporting the liquids, or in any article used with them, or exposed to them. These facts are so ordinary, common, and immemorial that courts, as well as juries, must take notice of them. In Potts v. Creager, 155 U. S. 597, 606, 15 Sup. Ct. 194, the court was considering especially the principle of so-called "double use"; but the language employed by it, by necessity, touches the question we are considering, and affords much practical assistance in the determination of what is a new result, within the purview of the patent law. The court said:

"In such cases we are bound to inquire into the remoteness of relationship of the two industries, what alterations were necessary to adapt the device to its new use, and what the value of such adaptation has been to the new industry. If the new use be analogous to the former one, the court will undoubtedly be disposed to construe the patent more strictly, and to require clearer proof of the exercise of the inventive faculty in adapting it to the new use, particularly if the device be one of minor importance in its new field of usefulness. On the other hand, if the transfer be to a branch of industry but remotely allied to the other, and the effect of such transfer has been to supersede other methods of doing the same work, the court will look with a less critical eye upon the means employed in making the transfer."

In the case at bar it cannot be said that there has been a transfer to a "branch of industry remotely allied," of the use of solid in lieu of jointed work, because this substitution has been practiced in every industry, unless it be the particular one at bar; and it cannot be said that the latter is remotely allied to all others, though it may be to some. Whatever has become free and common to the field of practical arts, as a whole, must be free to every part of that field, except under extremely exceptional circumstances. The decree of the circuit court is reversed, and the case remanded to that court, with directions to dismiss the bill, with costs.