SAFEGUARD ACCOUNT CO. v. WELLINGTON.

(Circuit Court, D. Massachusetts. January 27, 1898.)

1. PATENTS—INVENTION.
   The use of perforated lines in paper, for the purpose of permitting easy separation, having for many years been common in the arts in which paper is used, its application to any particular art, or any subdivision thereof, does not involve invention, unless under peculiar circumstances.

2. SAME—BLANK BOOKS FOR LEDGERS.
   The Horne patents, Nos. 393,506 and 393,507, for blank books, considered; and the former, which is for a book having full leaves of the same width, a part of which are longitudinally perforated near their outer edges to make removable margins, thereby forming a long and short leaf ledger, is, nevertheless, following the analogy of Thomson v. Bank, 3 C. C. A. 518, 53 Fed. 250, held valid and infringed, and the latter held void for want of invention, over the former.

This was a suit in equity by the Safeguard Account Company against Edward F. Wellington for alleged infringement of letters patent No. 393,506 and 393,507, issued to John W. Horne for blank books.

Clarke, Raymond & Coale and George O. G. Coale, for complainant.
Robert W. Hardie, for defendant.

PUTNAM, Circuit Judge. The earlier of the two patents in suit, No. 393,506, is the only one which requires particular consideration. It was applied for June 27, 1887, and issued November 27, 1888. Claim 1 is as follows:

"A blank book having full leaves of the same, or substantially the same, width, a part of which are provided near their outer edges with longitudinal lines of perforations to form removable margins, and the rest of which are unperforated, the perforated and unperforated leaves being interposed between each other throughout the book with one or more of the perforated leaves between the unperforated ones, substantially as set forth."

The nature and purposes of the alleged invention are pointed out by the complainant substantially as follows: The advantage of a long and a short leaf ledger is that one column of names will answer for the pages on several narrow leaves of the book, as well as for the wide page on which it stands, and the opposing wide page. The book with a long and a short leaf is old. The book of the patent, however, is not made with a long and a short leaf, but with leaves of the same width, or substantially the same, throughout, and is so constructed, by perforation or its equivalent, that the user of the book can, without difficulty, make a long and a short leaf book, by removing so much of certain intervening leaves as is necessary in order to so expose the names column of one page that it may be used with the other pages of the series. Before the invention in suit, to make a long and a short leaf ledger it was generally best to make a book in which all of the leaves were of full size, and then to cut from one or more leaves, following the leaf which contains the names column, a margin of proper width. Such a construction of a long and a short leaf book is difficult and expensive, from the bookbinder's point of view, owing to the fact that the book, if it is to have the ordinary finish, namely, a flat, heavy, broad binding, and colored, burnished edges, must be made and finished exactly like an ordinary book, and then have certain of its leaves shortened by cutting by hand. If the employé carelessly cuts the wrong leaf, the book is ruined. Moreover, the result is a book in which the outer edges of the leaves are flabby, and liable to collect dust, and become dog-eared; the covers themselves also being liable to become warped when in use. Looked at from the bookkeeper's point of view, such a book is difficult to use, for the reason that there is no firm, solid surface upon which to enter in the names column the various accounts. On the other hand, in the complainant's book the leaves which are to be made short leaves are perforated before the book is bound up, and, in case of any error in the perforations, the leaf or sheet may be discarded when the sheets are gathered before stitching. The various processes which follow are those ordinarily practiced in making a long-leaf book of equal thickness. The book may receive proper pressing, and the edges of the leaves may be colored and burnished in the ordinary manner, and in fact be made without any increased expense in its manufacture over that of the ordinary long-leaf book, except the cost of perforating. As the result, the accountant has a book in which the names may be easily written in the names column, for the reason that the book is solid throughout, like an ordinary ledger, and yet, when it has been partially used, he may convert it into a long and a short leaf book, so that the same names column may apply to a number of pages.

We think we have thus fully stated what the complainant main-

tains as the invention covered by claim 1 of patent No. 393,506, and the advantages of its use. None of these alleged advantages are suggested in the patent; and while, of course, this fact does not deprive the holder of the patent of the benefit of them, if they in fact exist, it weighs in favor of the proposition that they do not exist, or at least are not of importance. The complainant's treasurer testifies that "many thousands," constructed according to the patents, have been sold; but he is unable to define this, nor does he make it appear whether the sales were on account of the patented features, or of the superiority of complainant's manufacture in other particulars. The complainant put in evidence a printed catalogue of its customers,—to be sure, of only a part of them; but it is significant from the almost total absence from it of banks and bankers, by whom complainant's patented device would be especially used if it possessed substantial merit. The manufacturer of the alleged infringing device apparently admits that "it is desirable to make the book appear like an ordinary ledger with full leaves," and the evidence also sustains most of the complainant's propositions as to the existence of the other advantages claimed by it. These advantages, however, are of a minor character, and the case fails to weigh all the peculiarities of the patented book pro and con, or to show that the patent marked, on the whole, any substantial step in advance in the matter of practical utility, or has ever been accepted as such. Sitting as triors of the facts, as well as of the law, we must take notice that the use of perforated lines in paper for the purpose of permitting easy separation has for many years been common to all the arts where paper is used. Under these circumstances, its application to any particular art, or any subdivision thereof, cannot be regarded as involving invention, unless under special circumstances. We have great doubts whether the advantages claimed in this case exhibit utility of that striking character which stamps on the mind an impression of the actual presence of the spirit of invention. Hollister v. Manufacturing Co., 113 U. S. 59, 72, 5 Sup. Ct. 717; Electric Co. v. La Rue, 139 U. S. 601, 605, 606, 11 Sup. Ct. 670; Potts & Co. v. Creager, 155 U. S. 597, 608, 15 Sup. Ct. 194; National Cash-Register Co. v. Boston Cash Indicator & Recorder Co., 156 U. S. 502, 515, 15 Sup. Ct. 434; Manufacturing Co. v. Holtzer, 15 C. C. A. 63, 67 Fed. 907, 910. Nevertheless, in Thomson v. Bank, 3 C. C. A. 518, 53 Fed. 250, the court of appeals for the Eighth circuit found invention in a patent in this same art issued for a device of substantially the same nature as that at bar, though not the same. We feel constrained to follow the analogy of that decision, especially as the case at bar is one of doubt. Applying to the question of novelty the rule stated by Judge Lowell in Stewart v. Mahoney, 5 Fed. 302, 305, and cited by us in American Street Car Advertising Co. v. Newton St. Ry. Co., 82 Fed. 732, 735, and also restated by the court of appeals for this circuit in Heap v. Suffolk Mills, 27 C. C. A. 316, 82 Fed. 449, 453, we conclude that the patent has not been anticipated. No definite point has been made that the complainant may not prevail on the second claim of patent No. 393,506, if it does on the first.

The other patent in suit, No. 393,507, which must be regarded as the later one issued, clearly contains nothing patentable not covered by the earlier one, and is void. Let there be a decree for the complainant, under rule 21, sustaining its suit on both claims of patent No. 393,506, and adjudging patent No. 393,507 void, with costs for complainant.