UNITED STATES PEG–WOOD, SHANK & LEATHER BOARD CO
v. B. F. STURTEVANT CO.

(Circuit Court of Appeals, First Circuit.   October 6, 1903.)

No. 480.

1. PATENTS—ANTICIPATION—CONSTRUCTION OF CLAIMS.
    The rule applied that the fact that the machine of a patent is capable of a method of use not referred to nor indicated in the patent cannot be availed of to affect the construction of the claims.

2. SAME—MACHINE FOR CUTTING SHOE-SHANK STIFFENERS.
    The Lewis patent, No. 607,602, for a machine for cutting shoe-shank stiffeners, is void for anticipation.

3. SAME—INVENTION.
    The substitution in a machine of a common drive shaft for other methods of driving is too familiar in the mechanical arts to constitute invention, under ordinary circumstances.

4. SAME.
    "Means for holding in and out of operative position" a part of a machine are so common in the arts that there can be no invention in such means, except in the details thereof, unless under exceptional circumstances.

5. SAME—MACHINE FOR CUTTING SHANK PIECES.
    The Lewis patent, No. 675,661, for a machine for cutting shank pieces for shoes, claims 1, 2, 3, 4, 12, and 19, are void for lack of invention. Claim 15 construed, and *held* not infringed.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

For opinion below, see 122 Fed. 470.

James E. Maynadier and George A. Rockwell, for appellant.
Elmer P. Howe and Benjamin Phillips, for appellee.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge.   This bill is based on the alleged infringements of two patents for alleged inventions—one to George E. M. Lewis, No. 607,602, issued on July 19, 1898, on an application filed on October 30, 1897; and the other, No. 675,661, issued on June 4, 1901, on an application filed on April 4, 1900, to John Lewis, a brother of George E. M. Lewis, who assigned one-half of his interest to the latter.   Patent No. 675,661 covers only improvements on the earlier one.   Both relate to machines for cutting "shoe-shank stiffeners" or "shank pieces" from wood veneers.

The litigation with reference to patent No. 607,602 is limited to the third claim as follows:

"(3) In a machine for cutting shoe-shank stiffeners, the combination with the cutting-block, the knives, and the cam, h, of the reciprocating holder, i, intermediate of the knives, the lever. e', pivoted to the frame, the rods, h', connecting the holder, i, with the lever, e', the roller, o', on the extremity of e', and the spring, g', for pressing the roller, o', against the cam, h', substantially as set forth."

¶ 1. See Patents, vol. 38, Cent. Dig. § 241.

The specification fails to express the state of the art or the nature and purpose of the invention in any comprehensible manner. It deals with numerous small details of machinery, and points out the purpose in such general terms as not to be practically useful. The record also fails to explain in a clear manner what is thus omitted from the specification. We gather that the stiffeners are cut transversely of the ribbon of veneer; that is, at a right angle to the length of the ribbon, or substantially so. It is desired, also, that the cut shall leave the edges or sides of the stiffeners beveled. The invention, among other things, relates to two knives operating in converging lines on the surface of the veneer, so one of them cuts through the veneer with a bevel to or from the center of the stiffener, while the other cuts with a bevel to or from that center, but with a reversed direction. Both knives reciprocate towards and from the veneer, and it is plain from the mechanism that it would be within the competency of any machinist of ordinary skill to arrange them so that they would reciprocate simultaneously. Of course, any machinist would thus arrange them, because a simultaneous reciprocation would result in better work and increased speed. That such a simultaneous reciprocation is to be accepted as a part of the claim, introduced therein by the words "substantially as set forth," is plain, because the specification uses the words "upward movement of the knives," and also the expression, "knives moved on the downward stroke," each of which, by using the singular number for the words "movement" and "stroke," contemplates only a single, and therefore a simultaneous, action in either direction.

All the details of this clam are of that class of which the common arts have many equivalents. Nothing in the record tends to prove to us, with reference to any of these details, that there is any peculiarity indicating an inventive spirit which distinguishes them from equivalent methods well known in the prior art of obtaining like movements of dfferent parts of machines. Indeed, the complainant's expert testifies that "the only new and fundamental and useful parts of this machine" (meaning the patented machine) "are the two obliquely placed cutting knives; their adjuncts, such as the chopping block and holder." He adds, "I do not consider the means for operating the knives or the feeding mechanism to be new."

The learned judge who sat in the Circuit Court dismissed the bill, so far as it relates to patent 607,602, on the ground that the supposed invention was anticipated by a machine constructed in 1892 by J. Roak Pulsifer. His opinion (122 Fed. 470) puts this with sufficient detail and clearness to save us the necessity of adding much thereto. There is here no such question as arose in Brooks v. Sacks, 81 Fed. 403, 26 C. C. A. 456, decided by this court on June 10, 1897, with reference to the existence, construction, function, and actual use of the alleged anticipation. Bearing in mind what we have cited from the testimony of the complainant's expert, to the effect that the means for operating the knives or the feeding mechanism in its machine were not new, with which we agree, the Pulsifer machine was mechanically the same as that now in controversy. It was capable of doing exactly the same work, although used by Pulsifer on leather-

board, and not on wood veneers. It required no readjustment which presumably involved the inventive faculty for the purpose of doing the work to which Lewis applied his device. There is nothing in the record showing that the trade had been looking in vain for suitable means of cutting out shanks or stiffeners from wood veneers, to bring the case within Watson v. Stevens, 51 Fed. 757, 2 C. C. A. 500, decided by this court on September 6, 1892. On the other hand, in McKay-Copeland Lasting Mach. Co. v. Copeland Rapid-Laster Mfg. Co., 77 Fed. 306, and 80 Fed. 518, 25 C. C. A. 611, decided by the Circuit Court for the District of Maine on August 18, 1896, and by this court on April 24, 1897, a device for clamping counters of leather was held to be anticipated by a prior wood-bending machine, containing the same parts, and operating on the same method. The analogy between the two anticipations is so striking as to require on our part no further discussion in support of the conclusion reached by the Circuit Court with reference to this patent.

We must not overlook the proposition brought to our attention, and discussed in the opinion of the Circuit Court, that machines constructed under patent No. 607,602 have been used to cut out the "waste" between the shanks or stiffeners; thus, in cutting, bringing the thin edge of each bevel against the chopping block, and there supporting it during the process, with a claimed resultant of giving better work. It is enough to say, however, that the patent on its face does not show the slightest indication of this method of operation. Thus, according to the axiomatic rule applied by us in Long v. Pope Mfg. Co., 75 Fed. 835, 839, 21 C. C. A. 533, and in Heap v. Tremont & Suffolk Mills, 82 Fed. 449, 457, 27 C. C. A. 316, this subsequent method of use cannot be availed of to affect the construction of claim 3 for the purpose of saving this case. Moreover, underlying this distinction between cutting out the waste and cutting out the shanks or stiffeners, is the fact that it is a mere question of feed, which can be regulated in any machine so soon as it is perceived that it is desirable so to do. The Circuit Court was right in holding that this proposition of the complainant is ineffective.

This brings us to patent No. 675,661, in which there are several claims in issue. This patent is for improvements in details on No. 607,602. With reference to all the claims except 15, the complainant submits to us that their characteristics are in "a common drive shaft, straight-edge cutting knives, which approach the material simultaneously, moving obliquely towards each other on their cutting stroke, and cutting out waste pieces between them, and means connecting the knives and drive shaft." As we have construed patent No. 607,602, the word "simultaneously" introduces nothing novel, and the only new element is the common drive shaft.

John Lewis testifies that the main difficulty in his brother's machine of patent No. 607,602, which led to the witness' common drive shaft, was the disadvantage of too many connections. While it is perhaps true that sometimes the mere simplification of mechanism by omitting parts may amount to patentable invention, yet this is only under exceptional circumstances, none of which appear in the case before us. The substitution in the arts of a common drive shaft for other

methods of driving is altogether too familiar to be held to be anything more than a mechanical improvement of an ordinary class, unless circumstances appear which this record does not disclose. Therefore, as the Circuit Court held, there is nothing in these claims, in the light of what the record shows, which amounts to patentable invention.

Claim 15 is as follows:

"(15) In a machine for cutting shank-pieces from a strip or ribbon, a main frame, a feed-roller mounted therein, an auxiliary frame hinged to said main frame having a roller mounted in its outer end, said rollers adapted to cooperate with each other to feed the strip or ribbon to the cutting-knives, and means for holding said rollers in or out of operative position, substantially as described."

It is impossible to discover in this claim any novel element, unless it be in the means for holding the rollers in and out of operative position. The mounting of one roller on a frame auxiliary to that which carries the main roller is certainly so common in the arts that we must take cognizance that it affords nothing new. The means for holding the rollers in and out of operative position referred to in the claim are described at great length and with much detail in the specification. They are simply locking contrivances, which also are so commonly used in the arts for holding in and out of operative position that nothing of that nature can be patentable, unless it contains something peculiar in the devices used therefor. In this respect the patent falls within the underlying principle applied in Bates v. Keith (C. C.) 82 Fed. 100, 103, affirmed by this court in 84 Fed. 1014, 28 C. C. A. 638, in the following language:

"Guides used in connection with sewing machines, and for innumerable other purposes, have been so common in the arts, and have been used from time immemorial for so many purposes, that it would be an unreasonable state of the law which would deny as a common right to every artisan and manufacturer freedom to procure or frame guides suited for his art, or for his particular subdivision of any art. In this respect it is impossible to draw any essential distinction between the common right and privilege of every person to adapt guides to his own peculiar necessities and the like right to shape gouges or plane irons, or combine them of different shapes, according to the changing necessities or desires of carpentry, or to devise, subdivide, or change the form of boxes, or other packing cases, according to the necessities of each particular trade."

In like manner, in Nutter v. Brown, 98 Fed. 892, 893, 39 C. C. A. 332, quoting from Consolidated Electric Company v. Holtzer, 67 Fed. 907, 15 C. C. A. 63, we said:

"In Consolidated Electric Company v. Holtzer, 67 Fed. 907, 15 C. C. A. 63, decided by us on April 6, 1895, it was said, at page 908, 67 Fed., and page 64, 15 C. C. A., that 'the right to improve on prior devices by making solid castings in lieu of constructions of attached parts is so universal in the arts as to have become a common one, so that the burden rests on any one who sets up this improvement in any particular instance as patentable to show special reasons to support his claim.' So, by parity of reasoning, it is so common in the arts to shift the movable point, when there is a movable point, that the mere statement that it is shifted will not enable the court to pronounce that there has been a substantial advance."

Following these practical applications of rules for aiding in the determination of what does or does not involve patentable invention, we

repeat what we have already said, that the subject-matter of "means for holding" "in and out of operative position" is so universal in the arts that there can be no invention except in the details thereof, unless under exceptional circumstances, which do not exist at bar. The Circuit Court was of the opinion that the respondent's machine has no "means for holding" the feed roller "in and out of operative position." Possibly this might need some qualification; but, however that may be, it is entirely plain that the respondent does not use the particular means pointed out with so much detail by the complainant. It follows, therefore, that the respondent does not infringe claim 15, and that the conclusions of the Circuit Court with reference to patent No. 675,661 are also correct.

The decree of the Circuit Court is affirmed, and the appellee will recover its costs of appeal.