GENERAL ELECTRIC CO. v. YOST ELECTRIC MFG. CO. et al.

(Circuit Court, S. D. New York. July 30, 1904.)

1. PATENTS—INVENTION.
    As a general rule, the mere making in one piece of a device formerly made in two parts does not constitute patentable invention.

2. SAME—EVIDENCE OF INVENTION—GENERAL USE.
    The fact that a patented device has come into general use because it can be made more cheaply than those previously in use is not sufficient to

¶ 1. See Patents, vol. 38, Cent. Dig. § 20.

¶ 2. Utility, extent of use, and commercial success as evidence of invention, see note to Doig v. Morgan Mach. Co., 59 C. C. A. 620.

establish invention, unless in a limited class of cases, where that is other-
wise doubtful.

3. SAME—INVENTION—INSULATING LINING FOR LAMP SOCKETS.

The Painter patent, No. 718,378, which covers an insulating lining used
in incandescent lamp sockets and a process of making the same, so far as
relates to the claims covering the product, is void for lack of patentable
invention; the only difference between the patented article and those pre-
viously in use being that the former is molded in a single piece, whereas
they were formerly made in two pieces, cut or stamped from a sheet of
material.

In Equity. Suit for infringement of letters patent No. 718,378,
for improvements in insulating linings and processes for making the
same, granted to George B. Painter January 13, 1903. On final
hearing.

Richard N. Dyer and Charles Neave, for complainant.
Clifton V. Edwards and Marcellus Bailey, for defendants.

HAZEL, District Judge. This suit was brought for an alleged in-
fringement of United States letters patent No. 718,378, granted Janu-
ary 13, 1903, to the complainant, as assignee of George B. Painter,
for improvements in insulating linings and processes for making
same. The defenses interposed are that the patent is void for want
of novelty and patentable invention. The alleged novelty involved
in the patent consists of a vulcanized insulating lining for incandescent
electric lamp sockets of two diameters, made or formed in a single
piece to fit the interior of the socket. The similarity in the insulating
lining manufactured and sold by the defendant to that described in
the specification of the patent in suit is not controverted. The patent
has 24 claims. Twelve relating to the lining as an article of manu-
facture are alleged to be infringed. The remaining claims relate to
the process of manufacture. The defendants do not manufacture
their device in this district, and therefore the present suit is based
solely upon the sale of defendants' sockets therein. Hence the court
is not asked to consider the process claims. It is thought sufficient
to set out claims 1 and 2, which read as follows:

"(1) A lining for lamp sockets which consists of a single piece of insulating
sheet-fiber shaped by molding to have a shoulder intermediate its length and
with the sections on opposite sides of said shoulder of different diameters.

"(2) A lining for lamp sockets which consists of a single piece of insulating
fiber shaped by molding into a tube having cylindrical portions of different di-
ameters and a shoulder portion joining the other portions."

The first claim covers a single piece of insulating lining of two
diameters having a shoulder intermediate its length. Claim 2 is for
a one-piece insulating fiber shaped by molding into a cylindrical tube
having different diameters joined at the shoulder portions of the
tube. In the defendants' brief the claims are divided into two groups,
namely, the first group comprising the claims for making the article
in one piece from any known moldable insulating material, and the
other for making single piece lining of one particular kind of insulat-
ing material. The Painter patent, as has been stated, describes a
single piece of vulcanized fiber extending over the interior surface of
a metallic shell of different diameters and forming a seamless insulat-

ing lining for the same. An incandescent lamp, briefly described, consists of an illuminating filament bent into the form of a loop and inclosed in a glass bulb. When inserted in the socket, electrical connection is made, resulting in an illumination of the lamp. Fine wires leading into the socket extend through and convey the electric current to the filament. The insulating lining prevents contact of the strands of wires with the metal parts of the socket. The illumination appears when the key, which controls the electric flow, is turned, and is extinguished when the electric contact is severed by breaking the circuit. The lamp may be manufactured and sold separately. As will appear presently, the prior art shows a form of metal sockets for electric lamps having an insulating lining formed in two cylindrical end portions with an intermediate sloping shoulder. The patentee, when his invention was conceived, was familiar with the state of the art, as may well be supposed from the admission found in the specification. The inventor stated in his application:

"My invention relates to that class of electrical apparatus in which a metallic shell surrounds other metallic parts serving to carry or regulate an electric current, and will be described with particular reference to sockets for incandescent lamps, though it is useful in various other relations. In such apparatus it is highly desirable that the metallic shell should be lined with an insulating sheet for obvious reasons. It has hitherto been the custom to stamp out from sheets of fiber or other similar material curved pieces which would, when assembled, form an approximately cylindrical lining of the proper shape; but this arrangement was objectionable, both because of the cost of manufacturing and assembling such pieces and because of the imperfection of the lining thus formed. My invention contemplates forming a single lining of the proper shape, made in one piece, and entirely suitable for the purpose for which it is intended."

It will be noted in this connection that the insulating lining in question is adapted to fit the interior of metallic shells having end portions of different diameters joined by an intermediate shoulder. The shape or configuration of the shells was not new when the patent was granted. Insulating linings of various kinds and of various materials, as applied to incandescent lamp sockets, were also old. Vulcanized fiber in sheet or tubular form adapted to molding was familiar. Moreover, it is contended that it was common in the art to supply a one-piece insulating lining to a metallic shell of an incandescent lamp to prevent the strands of wire which enter the socket and connect the metallic parts from twisting or abrading the circuit by contact with the outer shell. To support this contention, the patents of Taylor, No. 316,847 and No. 616,746, Bergman, No. 443,562 and No. 484,580, Dempster, No. 443,746, and Klein No. 471,645, are cited to anticipate the patent in suit. The Taylor patents treat of shaping or molding vulcanized fiber by compression. The Klein patent describes a socket for electric lamps having a metallic shell of different diameters. The lining of insulating material prevents contact with the circuit connections, and is located in the outer or smaller portion of the shell. It does not extend through the socket, and obviously is without a shoulder by which the upper and lower parts are joined. The Bergman and Dempster patents show shells of one diameter, but the lining of hard rubber, though extending through the shell, lacks

the shoulder intermediate its length.    According to the testimony of complainant's expert witness, the language of the specification setting forth the known "custom to stamp out from sheets of fiber or other similar material curved pieces, which would, when assembled, form an approximately cylindrical lining of the proper shape," merely contemplates the utilization of fiber for an insulating lining of a single piece instead of two pieces.    The patent of Perkins, No. 626,927, dated June 13, 1899, describes an insulating lining of vulcanized fiber formed in two parts to closely fit sockets shaped like those of the patent in suit.    Although the Perkins patent is of later date than the Painter patent, the insulating lining is of the precise shape as the two-piece lining which Painter, in his specification, admits to be old. Therefore, irrespective of the process by which the lining is molded, the single question presented is whether it was invention to make in one piece a seamless insulating lining for a lamp socket which previously had been made in one or more pieces of the same material. The function of the one-piece and that of the prior two-piece lining is precisely the same.    The process by which the vulcanized tubing is utilized to make a one-piece lining of different diameters to closely fit the interior of the lamp socket is practically identical with that of shaping or forming metals of different diameters by forcing the same into a female die.    The process by which the insulating lining is made, as already said, is not here directly involved.    Nevertheless, the question of novelty of the device may be considered in connection with the process of manufacture for the purpose of ascertaining the state of the art.    For example, the operations by which cartridge shells are formed and the desired conformation of the insulating lining of the patent in suit is obtained are apparently similar.    This point, however, need not be decided, and no opinion thereon is expressed, as the construction of the process feature of the patent is not intended.    The theory of complainant is that the invention for an insulating seamless lining of different diameters, and having a shoulder intermediate its length, has great merit, and hence is entitled to the protection of the patent laws.    As heretofore indicated, the only difference found between the patent under consideration and the prior art is the seamless feature of the lining.    This feature, according to complainant, is of the essence of the invention.    Defendant lays particular stress upon the fact that the previous patents and the customary method of manufacturing insulating linings enabled the construction of a seamless lining like that described in the patent in suit by the skilled in the art without experiment or engineering skill.    This contention is thought to possess merit.    Giving consideration to the state of the art as known and understood by the inventor when the device was conceived, it is clear that Painter made no such alteration as resulted in a different application.    Therefore his invention is not patentable.    The production of a seamless insulating lining having a shoulder intermediate its length required nothing more than the knowledge of the trained engineer or workman.    Complainant's device consists merely in making in one piece that which was formerly made in two parts, and performs no new function.    The principle announced in Howard v. Detroit Stove

Works, 150 U. S. 164, 14 Sup. Ct. 68, 37 L. Ed. 1039, would seem to apply to the case at bar. There the patent related to an improvement in stoves, and the court substantially held that, because the bolting or riveting together of sections of a stove was well known at the time of the alleged invention, the claims were void for want of patentability. The court said:

"It involves no invention to cast in one piece an article which had formerly been cast in two pieces and put together, nor to make the shape of the grate correspond with that of the fire pot."

In Standard Caster Wheel Co. v. Caster Socket Co., 113 Fed. 162, 51 C. C. A. 109, the patent described a method of making in one piece that which has formerly been made in two. It was there stated as a general rule that the mere making in one piece of a device formerly made in two parts, which were mechanically attached, is not invention. It was further stated that there were exceptions to the general rule, which, however, depended upon the special facts indicating the presence of inventive faculty in a degree beyond mere mechanical knowledge. The patent involved in the Standard Caster Wheel Company Case was for an improved socket for receiving the shank of a furniture caster. The socket was provided with a spring of the same material made integral with one side of the socket. No invention was found to exist, because the function of the spring made integral with the caster socket was precisely the same as that resulting from its application in the prior art. In reaching its conclusion the court distinguished the case of Krementz v. S. Cottle Co., 148 U. S. 556, 13 Sup. Ct. 719, 37 L. Ed. 558, on the ground that the collar button involved there was an improvement of form, strength, and lightness, and, being made of gold, resulted in an important cheapening in cost. True, there is evidence in the record tending to show that the Painter device, because of its cheapness, speedily superseded the two-piece insulating lining of the prior art, but, as was said in Consolidated Electric Manufacturing Co. v. Holtzer, 67 Fed. 907, 15 C. C. A. 63: "Such considerations are applied with caution to a very limited class of cases otherwise doubtful." McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, 35 L. Ed. 800; Duer v. Corbin Cabinet Lock Co., 149 U. S. 216, 13 Sup. Ct. 850, 37 L. Ed. 707; Olin v. Timken, 155 U. S. 141, 15 Sup. Ct. 49, 39 L. Ed. 100. The principle of these cases applies here. In Consolidated Electric Manufacturing Co. v. Holtzer, the patent was for a negative battery element in which the electrode and the cover were made in one, with a hole in the cover. In the prior art the electrode and cover were separate. The decision of the court was to the effect that there was no patentable invention in making solid castings in lieu of construction of attached parts, and that the burden rested upon the inventor of such an improvement to show special reasons in support of his claim. Complainant's expert witness Wirt testified that the linings of the prior art were not satisfactory, in that the fine strands of wires would pass through the seams, and thus come in contact with the shell. Though this defect has been removed by the patent in suit, it is nevertheless thought to have been merely such a modification of the two-piece lining as comes

within the sphere of the skilled artisan. This conclusion also finds support in the evidence showing that it was not new to compress or mold vulcanized fiber either in sheet or in the form of tubing.

For the foregoing reasons a decree may be entered dismissing the complaint, with costs.