GIBBS LOOM HARNESS & REED CO. v. HOWARD BROS. MFG. CO.

(Circuit Court, D. Massachusetts. May 7, 1907.)

No. 171.

PATENTS—INVENTION AND INFRINGEMENT—HEDDLE-MAKING MACHINE.

The Gibbs patent, No. 626,900, for a heddle-making machine, claim 15, was not anticipated and discloses invention in the mode and means shown for twisting the wire. Claims 4, 5, 6, 7, 8, 13, and 14 are void for lack of invention. Claim 15, also, *held* infringed.

In Equity

Louis W. Southgate, for complainant.
George A. Rockwell, for defendant.

BROWN, District Judge. This suit involves claims 4, 5, 6, 7, 8, 13, 14, and 15 of letters patent No. 626,900, issued June 13, 1899, to William H. Gibbs, for a heddle-making machine. The specification alleges:

"The object of my invention is to provide an automatic power-driven machine for making and finishing wire heddles of substantially the construction illustrated in letters patent of the United States to Herman Vogelsang, No. 527,165, granted October 9, 1894.

"To these ends my invention consists of the parts and combinations of parts, as hereinafter described, and more particularly pointed out in the claims at the end of this specification."

The defendant denies that either of the above claims discloses a patentable invention. Infringement is not denied if the claims are valid.

The Vogelsang heddle is a device made of wire, and is used to control the warp threads in the production of a woven fabric. It is composed of two strands of wire soldered together so that the material forms substantially one compound strand of wire. A length of this wire is so manipulated that it results in a finished heddle having two end loops for attachment to the frames or harnesses of the loom, and a thread-eye, intermediate of the loops, through which the warp thread is passed. In making the Vogelsang heddle by hand, the soldered wire was split by an awl or hand punch to form the thread-eye, the wire twisted at either side of the split portion by turning the awl, the ends bent over, and then twisted so as to form end loops. The thread-eye is at right angles to the loops in the finished heddle. The Vogelsang heddle itself constitutes a complete direction as to the kind of

wire to be employed, to wit, a double-strand soldered wire, and also indicates the operations to be performed on this particular kind of wire. The strands must be separated in the middle, the ends bent to form loops, and four twists be put into the wire; one twist at each side of the space forming the thread-eye, and one twist at each end to complete the end loops.

In the machine of the patent in suit, wire of this special kind is used. It is passed through feed-rolls which turn it flat side up. A pair of knives cut off a suitable length for the blank. The end benders operate, preferably simultaneously, to form the loops at the end. A reciprocating punch separates the two strands in order to form the thread-eye. The blank being held in its position, the punch remaining in the thread-eye, and the end loops being held firmly, four twisting-jaws engage the body portion of the blank, one on each side of the thread-receiving eye, and one where each end loop is bent back to the body portion of the heddle, and four twists are then simultaneously formed by rotating the body portion of the blank. Finally, the complete heddle is delivered sideways out of the machine. The machine is practical, increases the speed of production, and turns out a product much more perfect and uniform than is made by hand processes.

In the prior art, heddles had been made by machinery from a single strand of ordinary wire which was first fed to the machine in the form of a loop, and then twisted without a punching operation. The two parts of the wire blank being parallel at the place of the thread-eye, an "eye-former" was interposed between them to hold them apart while a twist was being put in at each side of the "eye-former" to make the thread-eye.

The principal prior patent is to Brown & Ashworth, No. 77,713, dated May 12, 1868. The specification is somewhat complicated and detailed, but it is enough to consider the twisting operation. Because the heddle is made of a single strand of wire looped throughout its entire length, the entire number of twists differs from the number of twists in the Vogelsang heddle. In Brown & Ashworth, however, three twists are put in simultaneously. Where the wire is bent back on itself, it forms a loop at (let us say) the right-hand side. A twisting-jaw brings the two parallel parts of the wire together and twists them to form one of the end loops; two twisting-jaws, one at either side of the "eye-former," twist the two parallel parts together at those points. Here are three twists made by twisting-jaws simultaneously engaging the body portion of the wire, and operating to put in three twists. The "eye-former" occupies the same position that is occupied by the punch in the machine of the patent in suit. At this first twisting operation there is formed the right-hand end loop and the thread-eye. At the other end (let us say the left end) of the heddle a different operation is necessary. It is necessary to join the two parallel portions of wire in two places to complete the left end loop. Whereas, in the Vogelsang heddle, each end loop is formed by benders which bend the end on to the body portion of the wire; in the Brown & Ashworth machine it is necessary to form the left end loop by first twisting the wire next the body portion, and then twisting the two ends of the wire together in order to complete the loop. Five twists

are necessary. The peculiar wire of Vogelsang obviates the necessity for the fifth twist for the formation of one of the end loops.

It is apparent, I think, that, if invention is to be found in the machine of the patent in suit, it must be in the mode of forming the twists and the means therefor. All operations up to this point seem to be obvious and familiar mechanical operations. The feature which does not seem to have been anticipated by the prior art is the following: A reciprocating punch, which has been used in the prior art only to split the soldered strands, remains in position to co-operate with twisting-jaws; the end loops are held firmly; four twisting-jaws simultaneously grasp the body portion of the wire and simultaneously put in the twists, the right-hand twist for the end loop being formed by holding the right-hand loop firmly and twisting the body portion upon it; the punch, in the formation of the thread-eye, co-operates with twisting-jaws at either side of the punch, the left-hand loop being formed by the co-operation of the left-hand twisting-jaws and the holder of the left-hand loop. Repeating: The wire blank, when subjected to the twisting process, is held firmly upon the punch and by the end holders, and the four twisting-jaws operate simultaneously upon the body portion of the wire in co-operation with the punch and with the end holders. While the use of twisting-jaws to twist the body portion of the wire is disclosed by the prior art, and the co-operation of an eye-former and twisting-jaws is shown, yet it may be fairly said that the prior art does not disclose the combination and co-operation of a punch, two end holders, and four twisting-jaws, for the simultaneous performance of the entire twisting operation. The machine is an embodiment of the conception of this novel co-operation of parts. That there is produced by these means a very perfect and very uniform type of heddle with a considerable speed is not denied.

While I agree with the defendant that the operations preceding the twisting of the wire might be regarded merely as such steps as would naturally occur to a mechanic, yet they are steps in the production of the heddle, and it has not been made to appear satisfactorily that the co-operation of parts following the splitting of the double stranded wire and the bending of the loops was so obviously the result of mere mechanical skill, as distinguished from invention, that the patent should be declared void for lack of invention.

Claim 15 is as follows:

"(15) In a heddle-machine, the combination of a feeding mechanism for feeding a double strand of wire into position to be acted upon, a twisting mechanism, end-benders for bending the ends of the wire into position to be engaged by the twisting mechanism to form the end loops of a heddle, and a punch for separating the wire strands to form a thread-receiving eye near the middle of the heddle, substantially as described."

This, in my opinion, is for a combination which is not anticipated, and in which there is a co-operation of parts different from that of the prior art.

Claims 13 and 14 are as follows:

"(13) In a heddle-machine, the combination of a feeding mechanism for feeding a double strand of wire into position to be acted upon, and a reciprocating

punch arranged to separate said double strand of wire to form a thread-receiving eye near the middle of the heddle, substantially as described.

"(14) In a heddle-machine, the combination of a feeding mechanism for feeding a double strand of wire into position to be acted upon, a vertically-movable punch, and a cam for actuating the punch, said punch being arranged to separate the strands of wire to form a thread-receiving eye near the middle of the heddle, substantially as described."

It is said that there is involved the conception of the use of a feeding mechanism that will necessarily feed and advance the double strand of wire in definite position in the machine, so that it will lie in proper position with respect to the center of the eye-splitting and forming punch. I am of the opinion that this is merely mechanical skill, and that these claims disclose nothing which was not substantially disclosed in the prior art.

Claims 4, 5, 6, 7, and 8 are as follows:

"(4) In a heddle-machine, the combination of end-benders for simultaneously bending back both ends of a wire blank upon the body portion thereof, and a twisting mechanism for rotating the body portion of the heddle while its ends are held stationary, substantially as described.

"(5) In a heddle-machine, the combination of a feeding mechanism for feeding a wire blank into position to be acted upon, end-benders for simultaneously bending back both ends of the wire blank upon the body portion thereof, and a twisting mechanism for rotating the body portion of the heddle while its ends are held stationary, substantially as described.

"(6) In a heddle-machine, the combination of twisting-jaws, end-benders for simultaneously bending back both ends of a wire blank upon the body portion thereof, and mechanism for actuating the twisting-jaws to engage with and rotate the body portion of the heddle while its ends are held stationary, substantially as described.

"(7) In a heddle-machine, the combination of formers, end-benders for simultaneously bending back both ends of a wire blank, and a twisting mechanism for rotating the body portion of the heddle while its ends are held stationary, substantially as described.

"(8) In a heddle-machine, the combination of a feeding mechanism for feeding a wire blank into position to be acted upon, end-benders for simultaneously bending back both ends of the wire blank, and a twisting mechanism for rotating the body portion of the heddle while its ends are held stationary, substantially as described."

These claims, it is said, cover the use of end-benders for simultaneously bending back both ends of the wire blank upon the body portion thereof, and a twisting mechanism which will rotate only the body portion of the heddle while its ends are held stationary. The simultaneous operation of the end-benders does not amount to patentable invention. U. S. Peg Wood Co. v. F. B. Sturtevant Co., 125 Fed. 378, 60 C. C. A. 244. Rotation of the body portion of the wire is shown in Brown & Ashworth, and the claims do not include the punch, which seems essential to any combination or operation which is of substantial novelty. In view of the prior art, I am of the opinion that, without the co-operation of the punch, a combination of end-benders and a twisting mechanism to rotate the body portion of a wire would not involve a substantial or patentable novelty.

While I regard the question of invention as close, yet claim 15 is for a combination which is new, and which seems to me to have a mode of operation which may be regarded as the result of an inventive conception.

I find claim 15 valid and infringed. I find claims 4, 5, 6, 7, 8, 13, and 14 invalid for lack of invention.

A decree may be entered accordingly.