COLT'S PATENT FIREARMS MFG. CO. v. WESSON et al.

(Circuit Court of Appeals, First Circuit. December 4, 1903.)

No. 491.

1. PATENTS—ANTICIPATION—SAFETY DEVICE FOR REVOLVERS.

 The Felton patent, No. 535,097, for a safety device for revolvers, in which a connecting lever between the cylinder and the firing mechanism prevents the cylinder from being swung outward or inward while the lock is cocked, construed, and the first three claims held anticipated by the Galand French patent of addition of January 12, 1894.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

For opinion below, see 122 Fed. 90.

William A. Redding (Alfred W. Kiddle, on the brief), for appellant. William K. Richardson and J. Lewis Stackpole, Jr., for appellees.

Before PUTNAM, Circuit Judge, and ALDRICH and LOWELL, District Judges.

PUTNAM, Circuit Judge. This is an appeal arising from a decree dismissing a bill for alleged infringement of the first three claims of letters patent No. 535,097, issued to Frank B. Felton on March 5, 1895, the caption being "Safety Device for Revolvers."

The claims are as follows:

"(1) In a revolver in which the cylinder is arranged to swing laterally outward and inward from and to its recess in the frame, the combination of a

holding device to confine the cylinder in its recess, adapted to be operated at will to release the cylinder, and a movable connection between said holding device and the firing mechanism, operated by the movements of said holding device to lock and release the firing mechanism, substantially as set forth.

"(2) In a revolver the combination of a cylinder arranged to swing laterally outward and inward from and to its recess in the frame, a holding device to confine the cylinder in its recess and adapted to be moved at will to release it, a firing mechanism for said revolver and a lever arranged between said holding device and said firing mechanism, one end of said lever engaging with said holding device and the other with a movable part of the firing mechanism, and said lever being operated by the movements of said holding device to lock and release the firing mechanism substantially as and for the purpose set forth.

"(3) In a revolver in which the cylinder is arranged to swing laterally outward and inward from and to its recess in the frame, the combination of a latch on the frame constructed to confine the cylinder in its recess, and adapted to be moved at will to release it, and a lever, connected with said latch and constructed and arranged to stand in the path of a movable part of the firing mechanism so as to prevent the operation of said firing mechanism when the said latch is in the position to release the cylinder, substantially as and for the purpose set forth."

It will be noticed that each claim commences with the words: "In a revolver in which the cylinder is arranged to swing laterally outward and inward from and to its recess in the frame," and the specification states as follows:

"My invention relates to an improvement in that class of revolvers in which the cylinder is journalled upon a crane arranged upon an axis below the cylinder and parallel with the axis of the cylinder, so that the crane and the cylinder may be turned laterally outward from the frame, for loading, or for the ejection of shells."

All this relates to the peculiar type ordinarily known as "Colt's revolver," and nothing which is contained in that type, whether it be a single element or a combination, can be regarded, for the purposes of this appeal, as in any way novel.

It is true the record does not show that interlocking connections between the firing piece and the holding device had ever been used in the peculiar type of revolver to which we say this patent relates, except as hereinafter stated. Nevertheless, the suggestion of the interlocking connection having once been made, it would seem that there were innumerable ways of applying it successfully to any type of revolver, so that the same could be done by any skilled mechanic. In our opinion passed down on October 6, 1903, in United States Peg-Wood Company v. Sturtevant Company, 125 Fed. 378, we remarked, with reference to locking contrivances, that "they are so commonly used in the arts for holding in and out of operative position that nothing of that nature can be patentable unless it contains something peculiar in the devices used therefor." And we further said: "The subject-matter of 'means for holding' 'in and out of operative position' is so universal in the arts that there can be no invention except in the details thereof, unless under exceptional circumstances." We may add that the methods of locking and of holding in and out of operative position are innumerable; so that, unless extreme care is used in analyzing patents for inventions relating to that topic, the

rule of equivalents, as applicable to alleged infringements, would block the path of invention to an extent which would be unreasonable.

On the question of invention, as well as on the question of infringement, the complainant has occupied much of our attention with reference to the fact that in the revolver to which the Felton interlocking arrangement was in practice attached the cylinder, although moved from its frame with manual assistance, can be returned to it instantly by a mere twitch of the stock. This means that the latch which, by the force of a spring, retains the cylinder in position in the frame until manually pulled back, is so arranged by a very common and well-known method that, on an attempt to return the cylinder to the frame, it springs back automatically without assistance, and admits the cylinder. This, however, was old in the complainant's type of revolver. It has no more relation to the interlocking device than any other peculiarity; and it is in no way referred to as an element in either the specification or the claims of the patent in issue. That this is immaterial necessarily follows from the fact that the claims in issue would be as well infringed by a revolver in which the holding device, or latch, was operated manually, both for releasing and restoring the cylinder to its position, as by one operated as in Colt's revolver.

The specification first describes the invention as follows:

"The object of my invention is to provide such a connection between the cylinder and the lock or firing mechanism, that the crane and cylinder cannot be turned laterally out of their normal position in the frame, while the lock is cocked, that is, in the firing position, and that should the lock be cocked when the crane and cylinder have been turned out of the frame, these cannot be returned to their normal position until the lock has been uncocked or brought to its position of rest."

It finally describes it as follows:

"I, therefore, do not wish to be understood as limiting my invention to the precise construction shown and described, it only being essential to the invention that the cylinder latch is connected with a lever, which interlocks with a movable part of the firing mechanism when the latch is opened."

Thus, in different parts of the specification, the scope of the invention is stated in essentially different terms. The first extract limits it with reference to the position of the lock, while the second contains no limitation except so far as is implied in the words "the cylinder latch is connected with a lever," etc.; that is to say, only in so far as it may, perhaps, be limited by the express statement that the lever is connected with the cylinder latch. Accepting in the first claim the words "substantially as set forth" as referring only to the second extract which we have made from the specification, in which the invention is stated broadly, the claim is positively and exactly anticipated by a French patent issued to Galand, delivered on January 12, 1894, described to be "for improvements in revolvers with extractor with laterally swinging cylinder." This patent was supplemental to a previous patent, but contains the specific element necessary to make the combination in the claims before us novel. What is described in Galand's patent as the "gate" takes the place of what is described as the

"latch" by Felton, and serves exactly the same purpose. The operation of Galand's pistol is clearly expressed in his patent in the following words:

"By opening the gate we stop all movement, prevent the discharge, and we release the cylinder which can rotate and present at liberty its chambers at the proper place where the cartridges are to be introduced into the same, while the bearer of the weapon cannot, either voluntarily or involuntarily, fire as long as the gate is open, and as long as the arm is not returned to its normal position."

The Galand device complies fully and clearly with all the requisites necessary to constitute a foreign anticipation. Not only is its essential principle described in his patent, but the details are also fully set out, and a pistol constructed substantially in accordance therewith has gone into extensive use in the French army. Every element in the first claim of the patent in issue thus construed reads into Galand's pistol. The court has personally verified this fact by comparing the claim with the templet exhibit of the Galand pistol in hand; and it has no doubt on the question of anticipation, so far as the first claim is concerned, if broadly construed.

Referring the words "substantially as set forth" to the first extract describing the invention which we have made from the specification, it may be observed that our attention has not been called to any proposition that anything in that extract, or growing out of it, is essential to this case. This extract relates to holding the lock at rest while the cylinder is turned laterally out of its normal position. The patent describes carefully the details for this, which include a lateral projection on the trigger in front of and below the arm of the connecting lever. This projection is made an express element in claims 4 and 5. No infringement of those claims is alleged. An examination of the models shows that, according to the normal use of the Galand device, the opening of the gate holds the hammer instantly, firmly and constantly at rest, although, with an abnormal use, the gate can be opened when the hammer is cocked, the latter, nevertheless, being held locked. However, the fact that no infringement of claims 4 and 5 is alleged demonstrates why, as we have said, our attention was not called to this matter by the complainant, and shuts out all doubt in reference thereto.

If, further, the words "substantially as set forth" are to be taken as referring to the details of the device described in the specification, of which there are a great many, it would then follow that the claim is to be very narrowly construed, in view, especially, of the rules which we have already said apply to locking devices; and there could be no infringement. If, again, the words "substantially as set forth" adopt only so much of the details described as appear in claims 2 and 3, this would leave only one aspect for all three claims. Claims 2 and 3 specifically name as an element "a lever arranged between said holding device and said firing mechanism, one end of said lever engaging with said holding device and the other with a movable part of the firing mechanism." Galand clearly anticipated this. All three devices—Galand's, Felton's, and the infringing device—employ a lever thus connected, and for the purpose described by Felton. Felton uses

a swinging lever, connected directly with the latch. The infringing device uses a like swinging lever, indirectly and remotely connected. Galand used a cylindrical form of lever, as directly connected with the parts named by Felton as was Felton's. There can be no question that in this art, and in fact in almost every art, each form of lever is a full equivalent of the other.

Therefore, on any construction of any of the claims, we cannot escape the conclusion that Galand anticipated Felton. Indeed, the complainant does not meet these propositions. It states at considerable length, under eight different heads, the alleged lines of distinction between Galand and Felton. None of them relate to the considerations which lead us to the conclusion we have expressed. Although eight in number, they can be classified as constituting only two in substance. One is that the Galand pistol is less efficient than Felton's; but no proofs are called to our attention sustaining this proposition, and the fact that Galand's pistol has become the standard arm of the French army throws on the complainant the burden of sustaining it clearly. We are unable to find anything which justifies us in giving any weight to this attempted distinction. The second class of distinctions turns entirely on the proposition that in Felton's pistol the cylinder can be swung back into the frame automatically, while in Galand's it can be swung back only with manual assistance opening the latch, or gate, precisely as in both pistols the cylinder must be released by the hand. We have already shown that this is not an element in either of the claims called to our attention, and that it is a peculiarity of the Colt's revolver not relevant to the claimed invention on which this appeal assumes to rest. We need not discuss that proposition further. By thus resting the case as between Galand and Felton on these attempted lines of distinction, the complainant impliedly and necessarily concedes that, those disappearing as they do and must disappear, the anticipation is perfect.

The decree of the Circuit Court is affirmed, and the costs of appeal are awarded to the appellees.